UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

OSCAR O. REYNA,

        Petitioner,

v.                                  Case No:   2:12-cv-107-FtM-38DNF

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS
and ATTORNEY GENERAL, STATE
OF FLORIDA,

        Respondents.
_____/

## OPINION AND ORDER[1]

This matter comes before the Court upon an amended petition for habeas corpus relief

filed pursuant to 28 U.S.C. § 2254 by Oscar O. Reyna ("Petitioner"), who is presently confined

at the Apalachee Correctional Institution in Sneads, Florida (Doc. 15).   Petitioner, proceeding

*pro* se, attacks the convictions and sentences entered by the Twentieth Judicial Circuit for

Hendry County, Florida in 2005 after his probation on seven 2002 charges was revoked. *Id.*

Respondents filed a response to the petition, and Petitioner filed a reply and a supplemental

---

[1] Disclaimer:   Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.   These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.   By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites.   The court accepts no responsibility for the availability or functionality of any hyperlink.   Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

reply to the response (Doc. 22; Doc. 32; Doc. 38).   Respondents responded to Petitioner's supplemental reply (Doc. 42).

Petitioner raises seven claims in his petition.   Specifically, he asserts that:   (1) his due process rights were violated by the police when they questioned him about a chain of robberies committed in Clewiston, Florida; (2) the sentencing score sheet used by the trial court to calculate his sentence was incorrect; (3) the sentence imposed by the violation of probation ("VOP") court was excessive; (4) his VOP counsel was ineffective for failing to advise him that if he took the state's plea offer, he would receive credit for the time he had already served in prison; (5) the trial court erred by denying two of his Rule 3.850 claims without holding an evidentiary hearing; (6) the post-conviction court erred when it rejected his claims of ineffective assistance of counsel; and (7) the trial court erred by not confirming that defense counsel was properly sworn before he testified at Petitioner's post-conviction evidentiary hearing (Doc. 15).

Upon due consideration of the petition, the responses, the replies, and the state court record, the Court concludes that the petition must be denied. Because the Court may resolve the Petition on the basis of the record, an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions under Section 2254.

I.      **Background and Procedural History**

In 2002, Petitioner was charged in seven separate cases with four counts of burglary, three counts of grand theft, and two counts of petit theft (Ex. 1 at 1-45).[2]   On September 17, 2003, Petitioner pleaded *nolo contendre* to all counts and was sentenced to two years in prison and two years on probation. *Id.*   Petitioner did not appeal his judgment or sentences.

---

[2] Unless otherwise indicated, references to exhibits are to those filed by Respondents on November 5, 2012 (Doc. 23).

On August 27, 2004, an affidavit of violation of probation was filed against Petitioner on all seven cases (Ex. 1 at 46-52).   On September 13, 2005 and October 12, 2005, a hearing was held on the violation, and the VOP court concluded that Petitioner had violated the terms of his probation (Ex. 1 at 146; Ex. 1A; Ex. 1B).   Petitioner's probation was revoked, and he was sentenced to 55 years in prison (Ex. 1 at 181-224).   The Second District Court of Appeal affirmed without a written opinion (Ex. 4); *Reyna v. State*, 941 So. 2d 379 (Fla. 2d DCA 2006).

Petitioner filed a motion to correct an illegal sentence pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure.   He sought 749 days of jail time credit on each sentence and argued that two of his sentences should run concurrently.   The motion was denied (Ex. 6).

Petitioner filed a motion pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, raising one ground of ineffective assistance of counsel ("Rule 3.850 motion") (Ex. 7).   The post-conviction court treated Petitioner's claim as three separate claims of ineffective assistance of counsel, and denied all three claims (Ex. 10).   The Second District Court of Appeal affirmed the post-conviction court's denial of claims one and three, but reversed the summary denial of Petitioner's second claim and remanded for an evidentiary hearing. *Reyna v. State*, 18 So.3d 1131 (Fla. 2d DCA 2009).   An evidentiary hearing was held, and afterwards, Petitioner was denied relief on the remaining claim of his Rule 3.850 motion (Ex. 21 at 88-169; Ex. 21 at 26-37).   The Second District Court of Appeal *per curiam* affirmed (Ex. 25); *Reyna v. State*, 77 So.3d 186 (Fla. 2d DCA 2011).

## II.   Governing Legal Principles

### A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a

claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   This standard is both mandatory and difficult to meet.   *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014).   A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *White*, 134 S.Ct. at 1702; *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).   A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406).   The unreasonable application inquiry "requires the state court decision to be more

than incorrect or erroneous," rather, it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward*, 592 F.3d at 1155.   Petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786–787 (2011)).

Finally, the Supreme Court has stated that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003) (dictum).   When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1*); see e.g. Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013); *Miller–El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

### B.   Standard for Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.*   This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89.   In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.   Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.   That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* At 694.   A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### C.   Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law.   Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
>> (A)   the applicant has exhausted the remedies available in the courts

of the State; or

(B)

    (i)   there is an absence of available State corrective process; or

    (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1) (2012).

Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971)).   The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.   *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998).   In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).   Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman*, 501 U.S. at 750.   If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances.   First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default.   "To establish cause

for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999)(internal quotation marks omitted).   To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]"   *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). Actual innocence means factual innocence, not legal insufficiency.   *Bousley v. United States*, 523 U.S. 614, 623 (1998).   To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).   In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

## III.   Analysis

### A.   Claim One

In Claim One, Petitioner makes a general argument that his due process rights were violated (Doc. 15-2 at 1).   Specifically, he asserts that he was not advised of his *Miranda*[3]

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).   In *Miranda*, the United States Supreme Court concluded that a suspect who has been advised of his rights against self-incrimination "may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." *Id.* at 444.   It is not necessary for the accused to be read his rights verbatim as stated in the Miranda opinion; the important inquiry is whether the warnings, however worded, conveyed to the accused his rights. *California v. Prysock*, 453 U.S. 355, 360–61 (1981).

rights prior to being questioned by the police about a chain of robberies committed in Clewiston, Florida in 2004. *Id.* at 1-2.[4]   Petitioner also argues that he was not provided the opportunity to consult with counsel prior to pleading guilty to an earlier charge of loitering and prowling and that the VOP court's use of this guilty plea as a basis for revocation of his probation violated due process. *Id.* at 6-7.

       1.    ***Miranda* Violation**

Petitioner asserts that he was not properly advised of his *Miranda* rights after his arrest for a string of new burglaries (Doc. 15-2 at 1).   He further states that, even if he was advised of his *Miranda* rights, due process was violated because the rights were not read to him in Spanish. *Id.* at 2-3.   He also claims that because he was under the influence of crack cocaine while being questioned regarding the burglaries, his waiver of *Miranda* was involuntary, and his confessions should not have been used as evidence against him at the VOP hearing. *Id.* at 4-5.

Respondents argue that any claim that Petitioner's *Miranda* rights were not adequately explained to him was not preserved because he did not properly argue this issue at his VOP hearing by making a motion to suppress his confession prior to the hearing (Doc. 22 at 28-29).   Respondents urge the Court to dismiss Petitioner's *Miranda* claims as unexhausted and procedurally barred as a result of his failure to preserve the issue. *Id.*   Petitioner asserts that this issue was argued at his VOP hearing and should be decided on the merits (Doc. 15-2 at 1-2; Doc. 32 at 2-3).

The state initially asserted at the VOP hearing that Petitioner had not filed a proper motion to suppress his confessions to police prior to the hearing (Ex. 1B at 41).   However,

---

[4] Two of these robberies formed part of the basis for the revocation of Petitioner's probation.

upon review of the record, it appears that the state may have retreated from this position. After arguing that Petitioner had not preserved this issue, the state made the following statement:

> We submit that Mr. Reyna's statement was given after *Miranda* warnings and we have established that through the testimony of Detective Pelham.   However, the State believes the Court need not even look that far because there was no motion brought to suppress that statement.   ***The statement is here in a motion to suppress – excuse me.***

(Ex. 1B at 41) (emphasis added).[5]   The state then went on to ask the VOP court to evaluate Petitioner's credibility on this issue. *Id.* at 42-43.   After hearing argument from both sides, including an argument from defense counsel that it was the credibility, not the admissibility, of Petitioner's confessions that were at issue, the VOP court concluded that Petitioner had violated his probation.   The court did not explicitly determine whether Petitioner had defaulted his *Miranda* claims by failing to file a motion to suppress; rather, the court merely found Petitioner's argument that he had not been properly *Mirandized* to be not credible.   The court stated:

> With respect to the burglary of Jimmy's Tires on or about March 22nd, 2005, we have – we had the testimony of the victim and we had the confession of the Defendant, and that --the Defendant has testified that with respect that confession that he's well, he said he was drugged up on crack cocaine, doesn't remember many things.   But then seems to remember not being *Mirandized*, and the testimony of the officers is more credible in the eyes of the Court.   I don't think you can have a selective memory as to the things that did happen or did not happen.

*Id.* at 59.   Based upon the state's apparent concession that a motion to suppress had been filed; defense counsel's argument that only the credibility, not the admissibility, of Petitioner's

---

[5] A review of the record does not include a motion to suppress, nor did the VOP court indicate whether a ruling had been made on such motion.

confession was at issue (Ex. 1B at 48); and the VOP court's conclusion that Petitioner's testimony was not credible, it appears that the *Miranda* issue was addressed at some point in the VOP proceedings.   Accordingly, the Court will not dismiss the instant claim as procedurally barred.   However, the claim fails on its merits.

Petitioner asserts that he did not knowingly and intelligently waive his *Miranda* rights because: (1) they were not given to him; (2) they were given to him only in English; and (3) he was high on crack cocaine when they were given to him (Doc. 15-1 at 1-5).   Whether a suspect in custody was informed of his *Miranda* rights is a question of fact; however, whether the suspect knowingly and intelligently waived his rights and whether his statements were voluntary are questions of law. *Mincey v. Head*, 206 F.3d 1106, 1131 (11th Cir. 2000); *Miller v. Fenton*, 474 U.S. 104, 115 (1985) (stating that whether a confession is voluntary under the Fourteenth Amendment is a question of law and a state-court's finding of fact on this issue is not entitled to a presumption of correctness); *Thompson v. Keohane*, 516 U.S. 99, 111 (1995) (assessing the predecessor of § 2254(e)(1)).   The United States Supreme Court has explained:

> [S]ubsidiary questions, such as length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the *Miranda* warnings, often require the resolution of conflicting testimony of police and defendant. The law is therefore clear that state-court findings on such matters are conclusive on the habeas court if fairly supported in the record. . . . But once such underlying factual issues have been resolved, and the moment comes for determining whether, under the totality of the circumstances, the confession was obtained in a manner consistent with the Constitution, the state-court judge is not in an appreciably better position than the federal habeas court to make that determination.

*Miller v. Fenton*, 474 U.S. 104, 117 (1985).

The VOP court did not believe Petitioner's assertions that he was not given *Miranda* warnings; that he did not understand the *Miranda* warnings; and that he could not have

understood the warnings because of his drug use.   Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).   Therefore, the state court's factual finding that Petitioner <u>was</u> advised of his constitutional rights under *Miranda* is presumed correct. 28 U.S.C. § 2254(e)(1).

The VOP court also concluded that Petitioner had understood his *Miranda* rights and voluntarily waived them (Ex. 1B at 59).   Upon review of the record, the Court concludes that the totality of the circumstances supports the state court's conclusions that Petitioner understood the *Miranda* warnings and that his waiver of his *Miranda* rights was voluntary.   At the VOP hearing, testimony was heard from police officer Chad Pelham ("Pelham") that Petitioner was advised in English of his *Miranda* rights prior to his confession and appeared to know what was going on (Ex. 1A at 49, 67).   Pelham further testified that during questioning, Petitioner did not seem to be under the influence of drugs or alcohol, and responded to Pelham's questions appropriately in English. *Id.* at 50, 56-57.   Pelham stated that Petitioner answered the police questions "very legibly and he was very knowledgeable about what he said." *Id.* at 50. Petitioner asserted at the VOP hearing (in English) that even though he didn't "speak real good English," he understood, "real good English." (Ex. 1A at 7).

"Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010). "As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Id.* at 385.   The VOP court considered the testimony of both Petitioner and the police and rejected Petitioner's claims that he did not receive or understand his *Miranda* warnings.   Petitioner fails to show that the state court

decision on this issue was contrary to, or involved an unreasonable application of, clearly established federal law.   Petitioner is not entitled to habeas relief on the ground that he did not receive proper *Miranda* warnings.

### 2.   Uncounseled Guilty Plea

Petitioner's probation was revoked by the VOP court on the grounds that Petitioner had committed two burglaries while on probation and also because Petitioner had pleaded guilty to a charge of loitering and prowling in 2005.   Petitioner asserts that he was not represented by counsel when he pleaded guilty to loitering and prowling.   He argues that the VOP court's use of an uncounseled guilty plea as one of the bases to revoke his probation violated his constitutional right to due process (Doc. 15-2 at 6).

Petitioner raised this issue on direct appeal, and the state argued in its answer brief that under Florida law, Petitioner had the burden to show that he had not waived his right to counsel on the loitering and prowling charge (Ex. 3 at 15-16).[6]   The state also argued that, even had the VOP court's use of the loitering and prowling charge to revoke Petitioner's probation been in error, Petitioner violated the terms of his probation by committing two other material violations, and as a result, he suffered no harm from the court's use of the loitering and prowling charge. *Id.*

Other than making a passing and unsupported reference to due process concerns, Petitioner does not explain how the state courts' adjudication of this claim was based upon

---

[6] Under Florida law a defendant's sworn statement that a prior conviction was uncounseled is insufficient to shift the burden to the state to provide that the convictions were counseled or that counsel was knowingly waived. *State v. Rock*, 605 So. 2d 456 (Fla. 1992). As noted by Respondents, Petitioner made no attempt to provide evidence showing that he did not waive counsel at his plea colloquy.   However, it is unnecessary to consider whether Florida law was violated by the VOP court's consideration of Petitioner's loitering and prowling conviction because even if the VOP court erred, Petitioner cannot show that he suffered a resulting due process violation.

an unreasonable determination of the facts or contrary to clearly established federal law. 28 U.S.C. § 2254.   Petitioner does not assert that his sentence was in any way enhanced by the admission of the uncounseled plea.   As noted by Respondents, Petitioner's guilty plea to the loitering and prowling charge was only one of three material violations resulting in the revocation of his probation (Doc. 22 at 33).   Petitioner does not allege that the loitering and prowling conviction, even if erroneous, increased his sentence in any manner.   Nor does he assert that his probation would not have been revoked had it not been for the loitering and prowling conviction.   *See Roberts v. United States*, 445 U.S. 552, 556 (1980) (a sentence may violate due process if it is based upon "material misinformation of constitutional magnitude.").

Generally, in order to succeed on a claim that his right to due process was violated, a petitioner must show not only that the alleged errors occurred, but also that he was prejudiced by the errors. *See United States v. Neri-Trejo*, 27 F. App'x 829, 830 (9th Cir. 2001) ("In order to succeed on a claim that his right to due process was violated, Neri-Trejo must show not only that the alleged errors occurred, but also that he was prejudiced by the errors."); *Smith v. United States Parole Commission*, 875 F.2d 1361, 1368 (9th Cir. 1988) (stating, in context of habeas proceeding, that the party claiming error in a parole revocation hearing must demonstrate prejudice); *McNeal v. United States*, 553 F.2d 66, 68 (10th Cir. 1977) (noting that for a parolee to establish a legal right to habeas corpus relief, the due process violation must also be prejudicial); *Rivera v. United States*, 25 F.3d 1053 (7th Cir. 1994) (parolee did not meet burden of showing that he suffered a denial of due process because he could not demonstrate prejudice).   The VOP court's consideration of Petitioner's uncounseled plea had no apparent impact on his sentence or upon the court's decision to revoke his probation. Petitioner has shown no prejudice and no due process violation.   This claim for habeas relief fails.

### B.      Claim Two

Petitioner asserts that the sentencing scoresheet used by the trial court to sentence him was improperly calculated (Doc. 15 at 7).   Specifically, he asserts that at the VOP hearing, the state alerted the court to the fact that Petitioner's sentencing scoresheet included points for burglary convictions that were not to be considered as additional offenses (Ex 1B at 61, 65).   Defense counsel agreed with the state and recalculated Petitioner's sentencing points to reflect only the burglary convictions that were to be considered (Ex. 1B at 65).   The VOP court asked that a corrected scoresheet be sent to the court, but used the scoresheet, as amended by defense counsel, when orally sentencing Petitioner at the sentencing hearing (Ex. 1B at 65, 72).

Respondents assert that, to the extent Petitioner raises a due process claim, the claim is unexhausted and procedurally barred because Petitioner did not raise its constitutional dimension in the state courts (Doc. 22 at 33).   Indeed, Petitioner did not raise this claim at all during his sentencing hearing.   He did raise this claim on direct appeal and argued, in terms of state law only, that "a scoresheet error requires resentencing unless the record conclusively shows that the same sentence would have been imposed using a corrected scoresheet." (Ex. 2 at 11).   Petitioner did not assert in his appeal brief that his sentence was incorrectly calculated; rather, he argued only that Florida case law supports a reversal for resentencing "where the court could not 'conclude with certainty that appellant's sentence would have been the same if the trial court had used a properly prepared scoresheet.'" (Ex. 2 at 13) (quoting *Val v. State*, 741 So. 2d 1199, 1200 (Fla. 4th DCA 1999)).   Petitioner did not allege a federal constitutional violation or cite any federal case in support of his position (Ex. 2 at 11-14).   The Second District Court of Appeal affirmed his sentence without written opinion (Ex. 4).   Accordingly, the constitutional dimension of this claim is unexhausted because Petitioner did not preserve the issue and then raise the constitutional dimension of

the ground on direct appeal.   Petitioner does not show cause, prejudice, or a fundamental miscarriage of justice to overcome the procedural default.[7]

To the extent that Petitioner argues that the post-conviction court erred under state law by not demanding a written corrected scoresheet, issues of state law are not cognizable on federal review. *See* Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). When a federal court considers whether habeas corpus relief is warranted, the decision is limited to whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254; *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam).   Further, the Eleventh Circuit has recognized that federal courts cannot review a state's alleged failure to adhere to its own sentencing provisions. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[i]n the area of state sentencing guidelines in particular, we consistently have held that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures.").

Pursuant to these principles, Petitioner has stated no claim for which federal habeas corpus relief is available.   The sentencing court's decision to use the scoresheet as orally amended by defense counsel instead of demanding a printed corrected scoresheet does not

---

[7] It would be futile to dismiss this case to give Petitioner the opportunity to exhaust the constitutional aspect of this claim in state court because it could have and should have been raised on direct appeal. *See* Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1989) (where dismissal to allow exhaustion of unexhausted claims would be futile due to state procedural bar, claims are considered procedurally barred in federal court) (reversed on other grounds in *Parker v. Dugger*, 498 U.S. 308 (1991)).   Florida's state procedural rules precluding a second direct appeal and the time limitations for bringing an appeal bar a return to state court to present the claims. See Fla. R. App. P. 9.110(b).   Therefore, Claim Two is both unexhausted and procedurally barred.

amount to a denial of due process.   No federal constitutional right is implicated, and in addition to being dismissed as unexhausted, Claim Two is denied.

### C.    Claim Three

Petitioner asserts that the sentence imposed by the VOP court was excessive (Doc. 15 at 8).  Specifically, in his brief on direct appeal, Petitioner stated that he received the maximum sentence for each of his convictions and that the court ran the sentences consecutively (Ex. 2 at 14).   He argues that the combined fifty-five year sentence was excessive. *Id.*   Respondents assert that the claim was not properly exhausted and is now procedurally barred because Petitioner did not raise this claim at sentencing or in a Rule 3.800 motion to correct a sentencing error (Doc. 22 at 34).[8]

Generally, before a claim is procedurally barred from federal review, a state court must reject reviewing the incorrectly presented claim.   Thus, the mere fact that a federal claimant failed to abide by a state procedural rule does not, in and of itself, prevent this Court from reaching the federal claim.   "The state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Harris v. Reed*, 489 U.S. 255, 262 (1989).   Because the appellate court issued no written opinion, the record fails to contain "a 'plain statement' that [the state court's] decision rests upon adequate and independent state grounds." *Harris*, 489 U .S. at 261 (quoting *Michigan v. Long*, 463 U.S. 1032, 1042 (1983)). However, in its appeal brief, the state argued procedural default, an argument not specifically rejected by the appellate court (Ex. 3). The court is presumed to have applied the state's

---

[8] Under Florida law, for claims of sentencing errors to raise even fundamental error on appeal, the defendant must first file a motion under Rule 3.800(b) of the Florida Rules of Criminal Procedure. *Jackson v. State*, 983 So. 2d 562, 569 (Fla. 2008).   If the error is not a sentencing error, the contemporaneous objection rule applies which permits consideration of unpreserved claims on direct appeal only under the very narrow fundamental error standard. *Id.*

procedural default rule. *Bennett v. Fortner*, 863 F.2d 804, 807 (11th Cir. 1989) ("[W]hen a procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default."). Consequently, Petitioner procedurally defaulted ground three. He fails to show both cause and prejudice or a manifest injustice to overcome the procedural default, and Claim three is dismissed as unexhausted and procedurally barred.

Even, assuming that Petitioner's Eighth Amendment claim can be considered fundamental error so that the contemporaneous objection rule would not apply, it fails on the merits because the state court's decision to reject Petitioner's Eighth Amendment claim was neither contrary to nor an unreasonable application of clearly established federal law. According to the United States Supreme Court, the Eighth Amendment "prohibits . . . sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, 284 (1983). However, "outside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare." *Id.* at 289-90. When determining whether a sentence is in violation of the Eighth Amendment, a court should look at three things: the gravity of the offense and the harshness of the penalty; the sentences imposed on other criminals in the same jurisdiction; and the sentences imposed for commission of the same crime in other jurisdictions. *Hong v. Sec'y, Dept. of Corr.*, 478 F. App'x 648, 651 (11th Cir. 2012) (citing *Solem*, 463 at 290–292).

The Eleventh Circuit has stated that "in order to overturn a state court sentencing determination, a habeas petition must show that the state court looked to incorrect precedent, confronted a factual situation that was materially indistinguishable from a prior Supreme Court case, or unreasonably applied past precedent." *Hong*, F. App'x at 651-52 (citing *Lockyer v. Andrade*, 538 U.S. 63, 73-75 (2003)). The *Hong* court noted that, "[b]ecause of the uncertain contours established by the Supreme Court in this area of jurisprudence, an unreasonable

application of its precedents would take an 'extraordinary case.'" *Hong*, F. App'x at 652 (quoting *Lockyer*, 538 U.S. at 75-77); *see also Harmelin v. Michigan*, 501 U.S. 957, 965 (1991) (stating, in a plurality opinion, that "*Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee").

Petitioner was sentenced to two fifteen-year terms of imprisonment for his two counts of burglary of a dwelling (Ex 1B at 68-70).   In Florida, second degree felony burglaries of a dwelling carry fifteen-year maximum sentences. *See* Fla. Stat. §§ 775.082(d); 810.02(3)(b). He was also sentenced to five five-year terms for third degree felonies. In Florida, third degree felonies carry a five-year maximum sentence. Fla. Stat. § 775,082(d).   Petitioner was sentenced within the limits imposed under Florida law. Generally, a sentence within the limits imposed by statute is neither excessive, nor cruel and unusual under the Eighth Amendment. *United States v. Johnson*, 451 F.3d 1239, 1243 (11th Cir. 2006).   Moreover, courts have recognized that multiple counts of conviction need to be punished more seriously than a single count, and Petitioner was sentenced to prison time on seven total counts.[9] *See, e.g., United States v. Johnson*, 451 F.3d 1239, 1243–1244 (11th Cir. 2006) (finding a 140–year sentence constitutional and reasonable, based on three counts of conviction with consecutive sentences); *Anthony v. United States*, 331 F.2d 687, 693-94 (9th Cir. 1964) (consecutive sentences amounting to forty years for two convictions of sale of marijuana was not cruel and unusual punishment); *Bocian v. Godinez*, 101 F.3d 465, 473 (7th Cir. 1996) (a fifty-five year sentence for multiple burglaries committed against elderly persons does not violate the Eighth Amendment).

---

[9] Petitioner also had additional counts to which he was sentenced to time served (Ex. 1B at 68-71).

This is not the "extraordinarily rare" case where a term of imprisonment is so grossly disproportionate to the offenses of conviction that it violates the Eighth Amendment. The state court's decision to reject Petitioner's Eighth Amendment claim was neither contrary to nor an unreasonable application of clearly established federal law.    In addition to being unexhausted, Claim Three fails under 28 U.S.C. § 2254(d).

**D.     Claim Four and Claim Six**

At the beginning of Petitioner's VOP hearing, counsel informed the court that the state had offered Petitioner twenty years in prison to "take care" of Petitioner's seven new cases and the VOP cases (Ex. 1A at 3-6).   In Claim Four, Petitioner asserts that counsel was ineffective for failing to advise him that if he took the state's twenty-year plea offer, he would receive credit for the time he had already served in prison (Doc. 15-2).[10]   He claims that he suffered prejudice because had he known that his previous jail and prison time would have counted against the state's twenty-year offer, he would have accepted the offer. *Id.*at 3. Petitioner raised this claim in his Rule 3.850 motion, and after an evidentiary hearing, the claim was denied (Ex. 21 at 29).   The Second Circuit Court of Appeal *per curiam* affirmed

---

[10]  Petitioner changed the substance of this claim in his supplemental reply (Doc. 38). In his amended petition, Petitioner asserted that counsel failed to inform him that he would receive credit for time served (Doc. 15-2).   In his supplemental reply, Petitioner asserts that counsel actually told him that he would <u>not</u> receive any credit for time already served (Doc. 38).   It is unnecessary for this Court to decide whether Petitioner is attempting to raise a new claim in his supplemental reply and whether that claim would be now be untimely — the post-conviction court specifically determined that counsel advised Petitioner that prior credit time served would offset the length of incarceration offered by the State and that counsel properly conveyed the plea offer to Defendant (Ex. 21 at 2-4); *see* discussion *infra* Claim Four.   This was a finding of fact entitled to deference on habeas review under 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct."). Accordingly, the post-conviction rejected any argument that counsel misled Petitioner (either affirmatively or by omission) regarding his entitlement to credit for time served.

(Ex. 25).   In Claim Six, Petitioner asserts that the post-conviction erred when it rejected this claim.

In rejecting this claim, the post-conviction court noted:

> Defendant claims that counsel was ineffective for failing to advise him regarding the credit time served he could receive. Defendant argues that counsel informed him of the 20 year plea offer by the State and informed him repeatedly of the maximum sentence he faced, but failed to inform him about the credit time served he could receive, such that he chose to reject the plea offer.   Defendant alleges he would have accepted the 20 year plea offer if counsel had informed him of the "minimum time he could have received if he had taken the State's plea offer of (20) years with all available jail and prison time credits served."

> At the evidentiary hearing, Mr. Rodriguez testified that he met with Defendant three times to discuss his violation of probation cases and spoke to Defendant in both English and Spanish.   Mr. Rodriguez further testified that when he conveyed the plea offer to Defendant, he explained Defendant would get credit for any time served in prison or jail, and that Defendant would get more credit for time served on the violation of probation cases because he had served a prison sentence.   He indicated that it was his practice to explain credit time served every time he met with a client.   He testified that he never made any indication to Defendant as to the manner which the 20 years would be served, if Defendant accepted the plea offer.   Since Mr. Rodriguez did not review the exact amount of credit time served Defendant would receive, Mr. Rodriguez thus did not misadvise Defendant regarding the length of time he would actually serve in prison. Mr. Rodriguez stated that Defendant said he would not make it through twenty years in prison, and that the only plea offer he would accept would be ten years in prison.   The record supports this testimony.   During the revocation hearing, Mr. Rodriguez asked Defendant about the plea offer he had conveyed, and Defendant responded that he had rejected the 20 year plea offer, but would plea to ten years.   A copy of the relevant portion of the transcript is attached.   The record and testimony refute Defendant's allegations, as they show that Defendant did not reject the plea offer due to any misadvice, or failure to advise, by counsel, but because he simply did not want to submit to 20 years in prison.   The Court finds Mr. Rodriguez informed Defendant that prior credit time served would offset the length of incarceration offered by the State, that he properly conveyed the plea offer to Defendant, and that his performance was not deficient.

> To the extent that Defendant may be arguing that counsel did not inform him of the exact amount of credit time served he would receive, such claim fails. Prior credit time served following a violation of probation is calculated by the Department of Corrections, and counsel would have no way of knowing the exact amount of prior credit the Department of Corrections would allot to Defendant.  Counsel cannot be ineffective for failing to provide Defendant with the exact amount of prior credit when he had no way of knowing that exact amount.  If counsel had given Plaintiff an incorrect estimate, Defendant would now be complaining counsel was ineffective for that.  Counsel's performance was not deficient.
>
> . . .
>
> After reviewing the record, and upon consideration of the testimony offered during the evidentiary hearing, the Court finds that Defendant has failed to meet his burden of proof as to either prong of *Strickland*.   Accordingly, Ground 2 is DENIED.

(Ex. 21 at 2-4) (internal citations to record omitted).

Petitioner does not explain how the post-conviction court's adjudication of this claim was contrary to *Strickland* or based upon an unreasonable determination of the facts.   He does argue in a supplemental reply that counsel's testimony at the evidentiary hearing was in contrast to statements he made at Petitioner's VOP hearing (Doc. 38 at).   Petitioner's post-conviction counsel raised the issue of counsel's inconsistent statements at the post-conviction evidentiary hearing and pointed out to the post-conviction court that the inconsistencies were "relevant on the issue of credibility[.]" (Ex. 21 at 129).   Presumably, Petitioner re-asserts this argument to this Court in order show that the post-conviction court unreasonably determined that defense counsel was credible.[11]

The post-conviction court was aware of the alleged inconsistencies in counsel's testimony, but still concluded that counsel was more credible than Petitioner.   Questions of

---

[11] Although Petitioner's assertion is unclear, he appears to believe that Mr. Rodriguez testified inconsistently as to the time frame in which he initially reviewed Petitioner's sentencing scoresheet.

the credibility and demeaner of a witness are questions of fact. *Freund v. Butterworth*, 165 F.3d 839, 862 (11th Cir. 1999).   The AEDPA affords a presumption of correctness to a factual determination made by a state court, and the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e). Moreover, determining the credibility of a witness, "is the province and function of the state courts, not a federal court engaging in habeas review." *Consalvo v. Sec'y for Dept. of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011); *see also Gore v. Sec'y for Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir. 2007) (recognizing that while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (citing *Rice v. Collins*, 546 U.S. 333, 341–42, (2006) ("[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")).   Federal habeas courts have "no license to re-determine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *see also Baldwin v. Johnson*, 152 F.3d 1304, 1317 (11th Cir. 1998); *Smith v. Kemp*, 715 F.2d 1459, 1465 (11th Cir. 1983) ("Resolution of conflicts in evidence and credibility issues rests within the province of the state habeas court, provided petitioner has been afforded the opportunity to a full and fair hearing.").

Petitioner has not shown, by clear and convincing evidence, that the state court's credibility determination was unreasonable.   At the evidentiary hearing, counsel, who is fluent in Spanish, testified that he met with Petitioner at least three times prior to his VOP hearing (Ex. 21 at 104).   Counsel stated that when he conveyed the state's twenty-year offer to Petitioner, he explained that Petitioner would get credit for time served on the violation of probation cases and the new cases. *Id.* at 106, 113.   He stated that Petitioner told him that the only acceptable plea offer would be ten years. *Id.* at 107, 113.   Counsel admitted that he

did not provide Petitioner with a specific number of days' credit because he did not know how the state's offer was structured, but stated that he told Petitioner he would receive credit for time served in state prison and for the time spent in jail while the violations of probation were pending. *Id.* at 117, 131-32. Petitioner testified at the evidentiary hearing that counsel told him only that the state's offer was twenty years and that he faced "seventy or eighty" years in prison if Petitioner was convicted at the VOP hearing. *Id.* at 135, 145.[12] Petitioner admitted that he knew that prisoners got credit for time served but that he did not ask counsel whether he would receive such credit. *Id.* at 135.

Based upon the record, this Court concludes that the state court's conclusion that counsel was a more credible witness than Petitioner and that Petitioner had been advised that the state's plea offer would have been offset by time served, was neither based upon an unreasonable determination of the facts, nor contrary to or an unreasonable application of *Strickland.* Petitioner is not entitled to habeas relief on Claims Four or Six.

### E. Claim Five

Petitioner asserts that the post-conviction court erred by denying two of his Rule 3.850 claims without holding an evidentiary hearing (Doc. 15-4 at 1). Specifically, Petitioner claims that "the record does not conclusively refute as required by rule 3.850, Fla. R. Cr. P., and controlling case law." *Id.* at 1. In the Rule 3.850 claims at issue, Petitioner had alleged that counsel was ineffective for failing to tell him about the maximum sentence he could receive and for failing to having an interpreter throughout the pre-trial plea negotiations (Ex. 10 at 2).

---

[12] At the beginning of Petitioner's VOP hearing, counsel inquired into Petitioner's rejection of the state's plea offer (Ex. 1A at 4-6). At that time, Petitioner asserted that counsel had advised him to take the state's twenty-year offer because he could get seventy or eighty years in prison otherwise. *Id.* Petitioner testified he did not want to take the twenty-year offer because "If I'm guilty, I want to be judged for what I'm guilty." *Id.* at 6.

To the extent Petitioner argues that he is entitled to habeas relief because of defects in his state collateral proceedings, he has not stated a claim. *See Carroll v. Sec'y, Fla. Dept. of Corr.*, 574 F.3d 1354, 1366 (11th Cir. 2009) (denying due process claim for habeas relief to the extent it rested on the state court's failure to grant an evidentiary hearing on a Rule 3.850 motion under Florida law).   Petitioner points to no decision of the Supreme Court to support his argument that federal law requires state courts to conduct evidentiary hearings on every claim of ineffective assistance of counsel.   Therefore, Petitioner's claim regarding the failure of the state court to conduct an evidentiary hearing does not state a cognizable claim for habeas relief.

To the extent that Petitioner now asserts that the post-conviction court's denial of these claims was contrary to, or an unreasonable application of *Strickland*, such assertion also fails. In its order denying Petitioner's claim that counsel had not apprised him of the maximum sentence he faced if he rejected the state's twenty-year offer, the post-conviction court noted:

> The Court finds that Defendant's first argument of not being informed about the maximum sentence is conclusively refuted by the record.   As admitted by the Defendant, counsel did inform him about a maximum sentence.   As Defendant stated at the violation of probation hearing, held September 13, 2005 "[a]nd [you] told me that if I don't get 20 years, it is probably going to be more time for me" . . . "I'm going to get 70 or 80 years." Accordingly, Defendant's first argument is denied.

(Ex. 10 at 2) (citations to the record omitted).   Petitioner does not explain how the post-conviction court's adjudication of this claim was contrary to *Strickland* or based upon an unreasonable determination of the facts.   A review of the record supports the state court's conclusion.

At the beginning of his VOP hearing, Petitioner expressed annoyance at counsel's warning that if his probation was revoked, he could receive a great deal of prison time. Petitioner characterized counsel's warning as a "threat" and insinuated that counsel's

recommendation that he take a plea meant he (counsel) was "against" him.   He noted, "You even went at lunchtime – And told me if I don't get the 20 years (in English) – And told me that if I don't get the 20 years, it's probably going to be more time for me.   Okay, what type of lawyer are you?" (Ex. 1A at 6).   Petitioner was advised of the possibility of receiving a long prison sentence if convicted at trial. The post-conviction court's adjudication of this claim was neither contrary to *Strickland* nor based upon an unreasonable determination of the facts.

As to Petitioner's claim that he should have been provided with a Spanish interpreter when he discussed the state's plea offer with counsel, the post-conviction court noted:

> [D]efendant asserts that counsel was ineffective for failing to have an interpreter present when they discussed the State's offer.   Defendant asserts that without an interpreter present, he was confused about the plea offer.   Defendant has failed to satisfy the deficiency prong of *Strickland*.   At the violation of probation hearing, Defendant answered in English that he understood the State had offered a plea, that he understood that he could get more than the 20 years offered by the State, and that he did not want to take the 20 years.   Also, during the violation of probation hearing, the Defendant repeatedly spoke in English and had to be reminded to use the interpreter.   In fact, at one point during the hearing, Defendant actually stated in English, "[o]nly because I don't speak real good English, but I understand real good English."   Accordingly, the Court finds Defendant's final argument to be without merit and disingenuous.   Defendant has failed to show how counsel was deficient, and consequently, is unable to satisfy the prejudice prong of *Strickland*.

(Ex. 10 at 3-4) (internal citations to record omitted).   This claim was affirmed on direct appeal (Ex. 17).   After the evidentiary hearing on a different claim, the post-conviction addressed this claim again:

> To the extent that Defendant argues he was not provided with an interpreter during his discussions with counsel, and that this was a major factor in his rejection of the 20 year plea offer, this claim also fails.   Mr. Rodriguez testified at the evidentiary hearing that he spoke with Defendant in both English and Spanish, and that Defendant appeared to understand.   An interpreter was provided to Defendant during the revocation hearing, and Defendant insisted on speaking English and

> responding to questions in English, despite repeated requests to use the services of the interpreter.   The record and evidentiary hearing testimony refutes Defendant's contention that he was unable to understand the plea offer during discussions with counsel.   Counsel's performance was not deficient for failing to retain the services of an interpreter during his discussions with Defendant, when counsel was fluent in Spanish and English, and could adequately communicate with Defendant.

(Ex. 21 at 29).

As noted in the post-conviction court's first denial of this claim, Petitioner repeatedly answered questions in English, although an interpreter was present, and Petitioner was instructed to speak through the interpreter (Ex. 1A at 5-29).   Petitioner told the VOP court that he understood "real good English." *Id.* at 7.   At the evidentiary hearing, Counsel, who practiced law in Puerto Rico, testified that he was fluent in Spanish and spoke to Petitioner in both English and Spanish when he explained the state's offer and that Petitioner appeared to understand what he was told about the state's offer and Petitioner's potential credit for time served (Ex. 21 at 105-106).   Counsel was found to be credible by the state court.   Petitioner has provided no support for this claim, and it is denied pursuant to 28 U.S.C. § 2254(d).

### F.   Claim Seven

Petitioner asserts that the trial court erred by not confirming that defense counsel was properly sworn before he testified at Petitioner's evidentiary hearing (Doc. 15-5 at 1-4). Defense counsel testified telephonically from Puerto Rico, where he lived, and was placed under oath by Christian Castillo, an attorney/notary who stated on the record that he was authorized to administer the oath to counsel (Ex. 21 at 100-02).[13]   Petitioner does not argue

---

[13] Counsel was sworn in on the record:

that Castillo was *not* authorized to administer the oath; rather he asserts merely that, if counsel had not testified, he could not have been deemed more credible than Petitioner by the post-conviction court.

This claim is unexhausted.   In his brief on appeal of the state court's denial of his Rule 3.850 motion, Petitioner asserted that the post-conviction court erred by allowing counsel to testify telephonically (Ex. 22 at 10-16).   In the brief, Petitioner argued that his due process rights were violated because the post-conviction court could not "personally observ[e] the bearing and demeanor of the witness when making its determinations concerning the credibility of the witness." *Id.* at 16.   Petitioner did not argue that the oath administered to counsel was somehow defective.   Therefore, the claim raised in the instant petition is not the same claim that he exhausted in state court.

Due to Petitioner's failure to take a proper appeal from the denial of post-conviction relief, there is no longer a remedy available in state court.   Because Petitioner does not

---

CASTILLO:   Yes, and for the record my name is Christian Castillo and I'm going to proceed to take the oath from this location.

Deponent, please raise your right hand and state your name for the record.

COUNSEL:   Francisco Javier Rodriguez.

CASTILLO:   Do you solemnly swear that the testimony you're about to give is the truth, the whole truth, and nothing but the truth?

COUNSEL:   Yes, I do.

CASTILLO:   Thank you. You may continue now.

(Ex. 21 at 102).

allege, let alone demonstrate, cause and prejudice for the default, and there is no evidence of "actual innocence," Claim Seven is unexhausted and barred from federal habeas review.[14]

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.   Certificate of Appealability[15]

Petitioner is not entitled to a certificate of appealability.   A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).   Rather, a district court must first issue a certificate of appealability ("COA"). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 335–36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

---

[14] It would be futile to dismiss this claim so that Petitioner may exhaust it in state court because it could have and should have been raised on direct appeal of the post-conviction court's denial of his Rule 3.850 motion. Petitioner cannot now take a timely, not to mention second, appeal from the trial court's order. *See* Fla. R. App. P. 9.140(b)(3).   Accordingly, in addition to being unexhausted, Claim Seven is procedurally barred.

[15] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1.      Claims One through Six of the amended petition for writ of habeas corpus filed by Oscar O. Reyna are **DENIED**; Claim Seven is **DISMISSED** as unexhausted and procedurally barred;

2.      This case is **DISMISSED** with prejudice;

3.      Petitioner is **DENIED** a certificate of appealability; and

4.      The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this 11th day of September, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Oscar O. Reyna
Counsel of Record

- 30 -